# In the United States Court of Appeals for the First Circuit

---

**UNITED STATES,**
*Appellee,*

v.

**ALEXIS D. NEGRÓN-CRUZ,**
*Defendant - Appellant.*

---

On Appeal from the United States District Court
for the District of Puerto Rico
Hon. Francisco A. Besosa, Senior U.S. District Judge

---

## MOTION FOR STAY OF REVOCATION PROCEEDINGS AND SHOW-CAUSE RESPONSE

While briefing on a February 7, 2024 motion to stay was pending in district court, the magistrate today commenced the subject revocation proceedings, and held a preliminary hearing. The district court later suspended briefing on a motion to stay proceedings after the government informed Judge Besosa that this Court issued an order to show cause regarding jurisdiction. ECF No. 511. This Court has jurisdiction to hear the subject interlocutory appeal and should stay proceedings until it does.

## LEGAL BASIS FOR GRANTING A STAY

On February 7, 2024, Mr. Negrón moved to stay revocation proceedings in district court. ECF No. 477. Mr. Negrón argued that all four *Nken* factor support a stay. The government has not argued the merits of this request in writing or in open court. The government presented no basis to proceed with a preliminary hearing over objection. The stay request was twice discussed in open court, on February 7, and again on February 12.

The district court, nevertheless, "failed to afford the relief requested." Fed. R. App. P. 8(a)(2)(A). The court had ordered the government to response to Mr. Negrón's motion to stay by February 21, 2024. ECF Nos. 486, 489. But a subsequent order issued February 16, 2024 appears to now hold consideration of the stay request in abeyance. ECF No. 512. And while the district court request for a stay was pending, the magistrate, over objection, held a preliminary revocation on February 12, 2024. *See* ECF No. 505.

Once this Court reaches the four *Nken* factors, they all support staying proceedings on the probation officer's motion seeking revocation. As such, Mr. Negrón can make the necessary preliminary showing to grant a stay. And this Court has jurisdiction to remedy the present issues under either the collateral order doctrine or under its authority to issue a writ of mandamus.

## I. Relief is warranted under the *Nken* factors.

The determination whether to grant a stay pending appeal is controlled by the four-part *Nken* test, which assesses (A) the likelihood of success on the merits; (B) the likelihood of irreparable harm absent relief; (C) whether issuance of the stay will injure other parties; and (D) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776-77 (1987)).

### A. Likelihood of Success on the Merits

#### 1. The district court's ex parte procedures are unconstitutional.

Ahead of Mr. Negrón's last final revocation hearing on November 9, 2023, the district court met with a probation officer ex parte to decide whether to revoke Mr. Negrón's term and what punishment to impose. ECF No. 500. As the district court stated to counsel:

> I have been speaking with [U.S. Probation Officer] Mojica about what to do today with Mr. Negrón, and we both agreed that the best thing to do would be to give him time served.

ECF No. 500 at 2. The probation officer would have committed contempt of court if she had disclosed her ex parte contacts with the judge. *See* D.P.R. Loc. R. 132(d), 03-mc-115-RAM, ECF No. 75, at *3 (D.P.R. Mar. 14, 2023).

In the present proceedings, a new probation officer fact witness has submitted an unsworn, highly subjective narrative alleging violations based on subjective factors like Mr. Negrón's "attitude." Any more precise statements memorialized by the probation officer fact witness are—per court order—off-limits to anyone but those witnesses and the district court. Standing Order, 18-mc-450-FAB (D.P.R. Jun. 13, 2018) (Besosa, J.) (barring access to "chronological notes prepared by the probation officers (known as 'chronos')"). And the USAO-PR takes the position that the district court's final revocation hearing need not separately afford confrontation of probation officer fact witnesses who testify before a magistrate at the preliminary hearing. *See* ECF No. 483 at 3 (Prosecution: "My request is that the Court take judicial notice of the transcript of the hearing from March. And if the Court does that, then the Government submits that that transcript contains the evidence necessary for the Court to make its findings."); *see also* Gov't Reply Re: Revocation Based Review of Preliminary Hr'g Transc., ECF No. 75, *United States v. Domenech-Polanco*, No. 19-114-FAB (D.P.R. Jul. 20, 2023) (seeking revocation based on preliminary hearing transcripts and arguing that the government has no *Brady* obligation regarding probation records).

In once seminal cases addressing informal quasi-adversarial revocation processes, the U.S. Supreme Court announced a set of minimum due process standards.

*See Morrissey v. Brewer,* 408 U.S. 471 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778 (1973). Even in informal state parole proceedings discussed in 1972 by the Supreme Court, would-be jailors of a parolee could not comply with due process unless the adjudicator of parole officer petitions, at each stage, was "neutral and detached." *Morrissey,* 408 U.S. at 486, 489. And ex parte revocations were outlawed.

Today, following Congress's innovative invention of "supervised release," a person on supervision is not simply serving a prison sentence outside the prison wall. And revocation proceedings are not processed by administrative officers: as Rule 32.1 recognizes, they're quite adversarial proceedings prosecuted by the U.S. government with probation officers serving as fact witnesses. *See* Rule 32.1 1993 Amendment (introducing requirement that the government produce "witness statements at hearings conducted under Rule 32.1," noting that "[a]ccess to prior statements of a witness will enhance the ability of both the defense and *prosecution* to test the credibility of the other side's witnesses").

Thus, *Morrissey* and *Gagnon* are not the floor for due process owed when the government seeks to revoke a person's community liberty while under supervised release. *See Boddie v. Connecticut,* 401 U.S. 371, 378 (1971). ("The formality and procedural requisites for [a] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."); *United States v.*

*Haymond*, 139 S. Ct. 2369, 2379 (2019) (Supreme Court precedent has "repeatedly rejected efforts to dodge the demands of the Fifth and Sixth Amendments by the simple expedient of relabeling a criminal prosecution a 'sentencing enhancement.'"); *id.* 2380 n.5 (When a person's supervised-release term is revoked, "what the court is really doing is adjusting the defendant's sentence for his original crime.").

Mr. Negrón sought an emergency stay of proceedings and release from custody on February 7, 2024. *See* ECF No. 477; ECF No. 482. When the magistrate denied release in court on February 7, Mr. Negrón appealed to the district court once again to revoke the magistrate's detention order. ECF No. 480; 18 U.S.C. § 3145(b).

The district court has simply not ruled on the motion to stay and the government didn't respond to it. Mr. Negrón remains detained during a process that cannot be lawfully continued until the district court's ex parte-conduct-permitting order is overruled. Where any revocation process puts a person's liberty in jeopardy, supplemental proceedings between the court and probation fact-witnesses undermine due process and are unconstitutional. ECF No. 454 at 3-4. A revocation hearing must be adjudicated based on evidence presented in court. Fed. R. Crim. P. 32.1(b). Witness statements against the accused, including those from probation officers, are generally subject to cross examination. *See id.* § (b)(2); *Gagnon*, 411 U.S. at 781-82. The

fact that revocation must be based on reliable evidence is well-settled. *United States v. Taveras*, 380 F.3d 532, 536-37 (1st Cir. 2004); *United States v. Correa-Torres*, 326 F.3d 18, 22 (1st Cir. 2003) (Hearings must be conducted according to principles of fundamental fairness.).

As argued to the district court, when it comes to ex parte communication, *Morrissey*, § 3583(e), and Rule 32.1, solely contemplate in-court, public revocation and sentencing. *Morrissey* ended the practice of ex-parte revocations without a hearing, enshrining both the right to publicly confront and cross-examine adverse witnesses (absent good cause to proscribe confrontation) and the right to factfinding by a neutral and detached arbiter. *Morrissey*, 408 U.S. at 488-90. Even beyond revocation factfinding, "where the probation officer discloses new facts that bear on the judge's sentencing calculus … , the general rule requires disclosure to the defense in advance of the sentencing hearing and an opportunity to subject the new material to whatever adversarial testing may be appropriate." *United States v. Marrero-Pérez*, 914 F.3d 20, 25 (1st Cir. 2019) (internal citation and quotation marks omitted).

This Court recently summed up the framework for neutral factfinding and adjudication as it drew from cases in the Court, other federal courts, and state decisions on point:

The judge must be both an unbiased neutral arbiter and a factfinder. In neither of these capacities is it permissible for a judge to undertake his own extrajudicial investigation of the facts. A judge may not, for example, unilaterally reach out to witnesses, make an ex parte trip to view the scene of the dispute, or undertake his own fact-gathering outside of court. So, too — apart from facts susceptible to judicial notice, *see* Fed. R. Evid. 201(b) — it is impermissible for a judge to consider evidence that has not been introduced. If a judge oversteps these bounds, the judge, in effect, impermissibly assumes the role either of a witness, or of an advocate.

*United States v. Teixeira*, 62 F.4th 10, 19 (1st Cir. 2023) (cleaned up).

The paradigm in place in district court does not permit the judge to be an "unbiased neutral arbiter and a factfinder." The court engages in ex parte consultation for final revocation decisions and penalty determination. *See* ECF No. 500 at 2; *United States v. Reyes-Correa*, 81 F.4th 1, 8 (1st Cir. 2023); *United States v. Ramos-Carreras*, 59 F.4th 1, 6 (1st Cir. 2023) ("[T]he district judge's knowledge of these purported facts is not revealed in the record…. As the government suggests, the district judge could have learned the alleged information from a conversation with the probation officer."). It has denied a motion to disclose the content of such ex

parte processes. ECF No. 471. And in adjudicating the motion to preclude ex parte communication, the district court did so without insisting that the government respond, stating the following: "Having reviewed the probation officer's response, this motion is DENIED." *Id.*

The court undertakes fact-gathering in collaboration with fact-witnesses whose documentation is not only off-limits to the accused, Standing Order, 18-mc-450-FAB, *supra*, but protected from disclosure under pain of contempt of court. *See* D.P.R. Loc. R. 132(d).

And with the government's pursuit of revocations based solely on prior transcripts, the court's ex parte contact with probation officer fact witnesses leaves the accused facing an alternate proceeding from that which the rules permit to take place ex parte with only the court having access to chronos and no probation officer able to disclose what took place in that supplemental proceeding.

Here, Mr. Negrón is detained pursuant to a warrant issued based on an unsworn probation-officer pleading with subjective allegations, including claims regarding Mr. Negrón's perceived "attitude." *See* ECF No. 439 at 1-7. Any more precise statements memorialized by probation officer fact witness are—per court order—off-limits to anyone but those witnesses and the district court. Standing

Order, 18-mc-450-FAB, *supra.* The present proceedings synergize with a combination of factors that leave a reasonable impression that ex parte practices and restrictions on information production effectively replace public revocations with a supplemental Star Chamber-type process whose proceedings are beyond access of the accused, their counsel, the public, and this Court. This process deprives "liberty … without due process of the law." U.S. Const. Amend. V. Mr. Negrón presents a powerful case for relief on the merits.

## 2. This Court has jurisdiction.

"A party requesting injunctive relief pending appeal bears the burden of showing that the circumstances of the case justify the exercise of the court's discretion." *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010). This Court has jurisdiction to correct the unconstitutional process that is depriving Mr. Negrón of liberty without due process.

***First***, **the order refusing to preclude ex parte fact-witness communication is a reviewable collateral order.** The Supreme Court permits immediate appellate review of such orders where they "finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such collateral orders are "too important to be denied review and too independent of the cause itself to require that appellate consideration

be deferred until the whole case is adjudicated." *Id.* For the collateral-order doctrine to apply, the order must involve the following:

> (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion.

*Espinal-Domínguez v. Puerto Rico*, 352 F.3d 490, 496 (1st Cir. 2003) (citation omitted). These four prongs[1] have been referred to as the four requisites as "separability, finality, urgency and importance." *Id.* (citing *In re Recticel Foam Corp.*, 859 F.2d 1000, 1004 (1st Cir. 1988)). Here, all four factors support review under the collateral order exception.

---

[1] This Court has at times delineated three requirements under *Cohen*, but *Espinal-Domínguez* references a fourth. *See Lee-Barnes v. Puerto Ven Quarry Corp.*, 513 F.3d 20, 25 n.3 (1st Cir. 2008).

### i. Denial of the request for adjudication free from ex parte fact-witness communication with the court is a conclusive determination—separate from the main revocation proceedings.

As discussed above, the challenged order refuses to preclude ex parte fact-witness contact with the court. It synergizes with existing orders and decisions, which show the court engages in ex parte review of evidence and consultation of with fact-witness officers as part of its final adjudication in revocation proceedings. When it comes to appeals challenging the denial certain constitutional rights, the U.S. Supreme Court has recognized the applicability of the collateral order exception for orders denying motions to reduce bail, denying motions to dismiss indictments on double jeopardy grounds, and orders denying motions to dismiss an indictment on speech and debate grounds. *Flanagan v. United States*, 465 U.S. 259, 266 (1984). Similarly, orders imposing forced hospitalization are collateral orders. *United States v. Mahoney*, 717 F.3d 257, 263 (1st Cir. 2013).

In context, the court's order "deprives [Mr. Negrón] … of conditional liberty," *Morrissey*, 408 U.S. at 480, without the constitutional right to a public hearing, right to confront the witnesses against him, and receive adjudication by a neutral and detached arbiter, among others. *Teixeira*, 62 F.4th at 19. As such, the present order appealed from is separable. It is not bound to the facts of this particular case, but

instead affects each and every probation-officer-initiated request for revocation of supervised release or probation.

## ii. The order provides a final resolution of the dispute.

The Supreme Court instructs that "collateral orders that are 'final' … turn on 'abstract,' rather than 'fact-based,' issues of law." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). Here, the question is a legal, pertaining to whether or not probation officer fact witnesses may have unrecorded, undisclosed ex parte contact with the district court in processes that involve reviewing evidence, discussing factual assertions, findings supporting revocation, and adjudications regarding punishment and resolution.

While the probation officers' actions in this case and in Mr. Negrón's November 2023 revocation, *see* ECF No. 500, provide background on the legal issue, the question at hand is not fact-dependent or isolated in this case. This fact is demonstrated where the court has some on-the-side contact with a fact witness probation officer who either writes out the court's sentencing allocution, shows the court video evidence, makes factual assertions outside the hearing, or opines as to what a court should "do … with" a person facing revocation proceedings. ECF No. 500 at 2.

### iii. Use of a separate ex parte fact-witness process is effectively unreviewable on appeal from a final judgment.

"As to the collateral-order doctrine's third requirement, the First Circuit equates this factor—'perhaps the [doctrine's] most elemental'—with 'urgency' or 'irreparable harm.'" *Lee-Barnes v. Puerto Ven Quarry Corp.*, 513 F.3d 20, 26 (1st Cir. 2008) (quoting *Espinal-Domínguez*, 352 F.3d at 496-97). This factor is met by a broad margin.

First, this Court has only seen a hint of what the at-issue ex parte practices are, and they will never enter the record if this case proceeds to a final revocation without immediate review. *See, e.g.*, *Reyes-Correa*, 81 F.4th at 8; *Ramos-Carreras*, 59 F.4th at 6. Whatever may have been learned through investigation is now, since March 14, 2023, off-limits in the District of Puerto Rico under D.P.R. Loc. R. 132. *See* D.P.R. Loc. R. 132(d), *supra*. And so, the full harm of ex parte pre-final-adjudication contact will remain unknown.

Yet, the integrity of the process will in any case suffer harm as any observer can reasonably have doubts as to whether the fact of revocation or a given punishment was determined by a public revocation hearing with due process guardrails or pursuant to some unrecorded ex parte process. One, for example, where the judge announces at sidebar that he and a fact-witness officer "both agreed that the best

thing to do" with the accused "would be to give him time served." ECF No. 500 at 2.

Second, like a challenge to detention or the amount of bail prior to adjudication, the very right not to be deprived of liberty will be unreviewable since the deprivation will have already taken place. *See Mahoney*, 717 F.3d at 263.

### iv. While constitutional parameters are settled, the precise issue is an important and unsettled question of controlling law.

The court's order denying a motion to preclude ex parte communication comes at a time when core cases are over 50 years old. *See Morrissey v. Brewer*, 408 U.S. 471 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). And those cases evaluated processes that were assumed far less formal and adversarial than federal revocations are today. So while *Morrissey* and *Gagnon* are written into Fed. R. Crim. P. 32.1, the law has been left with enough ambiguity that the District of Puerto Rico unanimously agreed to impose a gag order on the probation officer fact witnesses who interact with them ex parte before final revocation hearings. Yet, all commentators on the District's Local Rule 132 raised concerns.

With the court's order declining to abstain from ex parte practices, this Court must settle whether neutral-and-detached revocation arbiters can sit ex parte with officers who make revocation requests and play a role in factual development and

substantive decision-making. Comments from the Puerto Rico Association of Criminal Defense Lawyers and the Federal Public Defender's Offices illustrate why such contact falls outside due process parameters and should be, at the very least, disclosed if it happens at all. *See* Comments of the Puerto Rico Association of Criminal Defense Lawyers, 03-mc-115-RAM, ECF No. 76, at *10-12 (D.P.R. Apr. 13, 2023); Public Commentary of the Federal Public Defender's Officer, District of Puerto Rico, *id.*, ECF No. 77, at *2-8 (D.P.R. Apr. 14, 2023). Similarly, U.S. Attorney expressed "concerns" about Rule 132(d) since the rule "does not define what type of recommendations are barred from disclosure in revocation proceedings." *Id.*, ECF No. 78 at *1 (D.P.R. Jun. 9, 2023).

Moreover, the constitutional question—of what degree of process must be provided to a person deprived of liberty upon motion by a probation officer—is of paramount importance. Considering the large number of people on supervised release, the court's due process-denying order stands to affect many others. Mr. Negrón's November 2023 hearing, along with the cases of *Ramos-Carreras*, *Reyes-Correa*, and the District's Rule 132 gag order, preview the reach of decisions to set aside the process called for by Fed. R. Crim. P. 32.1 and erode it with a separate, ex parte, unreviewable process. The importance of this issue, to clarify what minimum due process means under today's supervised release paradigm where U.S. Attorneys

prosecute violations alleged by probation officers working for the court, cannot be overstated. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("The formality and procedural requisites for [a] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."). Thus, this Court has jurisdiction under the collateral order doctrine.

**Second, and alternatively, this Court has jurisdiction under its power to issue a writ of mandamus.** If this Court does not find an exception to 28 U.S.C. § 1291 applies under the collateral order doctrine, it should find jurisdiction under its mandamus power. "'A petitioner seeking mandamus must show both that there is a clear entitlement to the relief requested, and that irreparable harm will likely occur if the writ is withheld.'" *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 38 (1st Cir. 2015) (quoting *In re Cargill*, 66 F.3d 1256, 1260 (1st Cir. 1995)). "The alleged error to which a petitioner points must be 'palpable.'" *Id.* (quoting *In re Cambridge Literary Props., Ltd.*, 271 F.3d 348, 349 (1st Cir. 2001)).

Here, the refusal to issue an order to preclude ex parte communication is palpably erroneous and *is* causing irreparable harm. Mr. Negrón remains detained pursuant to process that does not comply with minimum due process. Even before Mr. Negrón was re-released to supervision in November, the district court held a

revocation hearing that began with an announcement that it assessed the probation officer's allegations in detail in an ex parte meeting with the probation officer fact witness. ECF No. 500 at 2. The same fact witness had petitioned the court last year for Mr. Negrón's arrest and revocation and testified for the government at his preliminary hearing. ECF No. 375 at 4. Presently, a separate fact-witness probation officer submitted an unsworn motion alleging technical supervised release violations and making a request that Mr. Negrón be imprisoned. While another officer testified briefly about one meeting she oversaw with the revocation-seeking probation officer, the probation officer seeking revocation remains the government's primary fact witness. *See* ECF No. 505 (minute entry describing preliminary hearing that held from 9:26 a.m. through 6:03 p.m. on February 12, 2024).

That same officer was the sole voice to oppose Mr. Negrón's motion to preclude ex parte communication. ECF No. 469. That officer did not deny past or anticipated ex parte contact with the district court. Rather, the officer ambiguously stated he'd "provided the most accurate information to the Court related to Mr. Negr[ó]n-Cruz'[s] compliance, conduct and attitude towards the supervision process." *Id.* at 2. And the officer claimed his "communication with this Court has been only related to the violations notified." *Id.* Finally, despite Rule 32.1's provision of formal hearings, the officer asserted that "[i]t is imperative that the Probation

Officer, who directly supervised Mr. Negrón-Cruz, be present during the entire process and be allowed to communicate with the Court." *Id.* Like any fact witness against the accused in liberty-depriving proceedings, the officer must not be cordoned off from a public, reviewable judicial process structured with due process protections and proscription of unreliable evidence. The challenged order affirmatively rejects such safeguards and is correctable through a writ of mandamus.

## B. Likelihood of Irreparable Harm Absent Relief

As discussed above, should the present proceedings continue to advance, Mr. Negrón's rights to liberty and due process stand to suffer irreparable harm. Try as he may to vindicate his rights in the public proceedings, he will not have access to what occurs behind closed doors. He will not be able to challenge material and arguments presented by the probation officer ex parte, present evidence during any ex parte proceedings, or confront and cross examine adverse witnesses.

### C. Possible Injury to Other Parties

A stay will injure no one. Instead, it will promote respect for the law by demonstrating that this Court is evaluating the necessary and sufficient due process protections that must be imposed so that *Morrissey*-Rule 32.1 proceeding comport with due process. Nor does Mr. Negrón present any danger or risk of flight pending resolution. The gravamen of the allegations is the probation officer's claim that Mr. Negrón possessed phones that had not yet been connected to Probation's third-party surveillance corporation. *See* ECF No. 439 at 4. Otherwise, a stay will serve the broader interests of the public by permitting Mr. Negrón to continue reintegrating in the community as he pursues work opportunities and long-term housing.

### D. Where the Public Interest Lies

While Mr. Negrón's liberty is most valuable to him, the public interest is best served by a process that ensures all our liberty is protected. "[N]o person shall be … deprived of … liberty … without due process of the law." U.S. Const. Amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## CONCLUSION

This Court should order proceedings stayed and find that it has jurisdiction to review this appeal.

**RESPECTFULLY SUBMITTED** on February 27, 2024.

> **RACHEL BRILL**
> Federal Public Defender
> District of Puerto Rico
>
> **FRANCO L. PÉREZ-REDONDO**
> Assistant Federal Public Defender
> Supervisor, Appeals Section
>
> **s/KEVIN E. LERMAN**\*
> Research & Writing Attorney
> First Circuit Bar No. 1194361
> Tel.: (787) 281-4922
> Email: Kevin_Lerman@fd.org

\***CERTIFICATION:** I ECF-filed this motion on February 27, 2024, notifying the parties, including government counsel. I further certify that this motion complies with type-volume limitations: at 4,158 words, it is under the applicable 5,200-word limit in Fed. R. App. P. 27(d)(2)(A).